## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| H.J. HEINZ COMPANY BRANDS LLC, | : | |
| | : | Civil Action No. _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | **COMPLAINT AND** |
| | : | **JURY DEMAND** |
| REAL GOOD FOOD COMPANY, LLC, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff H.J. Heinz Company Brands LLC ("Plaintiff" or "Kraft Heinz"), by and through its undersigned counsel, for its Complaint against Defendant Real Good Food Company, LLC ("Defendant"), hereby avers as follows.

## NATURE OF THE ACTION

1.     This is an action for trademark counterfeiting, trademark infringement, trademark dilution, false designation of origin and unfair competition arising out of Defendant's unauthorized use of marks that are identical and/or confusingly similar to Kraft Heinz's POPPERS trademarks to promote and sell frozen appetizers and other food products in a way that has caused and/or is likely to cause consumer confusion and irreparable harm to Kraft Heinz.

## PARTIES

2.     Kraft Heinz is a Delaware limited liability company with a principal place of business at One PPG Place, Pittsburgh, Pennsylvania 15222.

3.     Defendant is a California limited liability company with a principal place of business at 111 N. Maryland Avenue, Glendale California, 91206.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (trademarks) because the parties' dispute arises under the federal Lanham Act, 15 U.S.C. § 1051 *et seq*.  This Court also has diversity jurisdiction over this action insofar as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest or costs, and is between citizens of different states as provided in 28 U.S.C. § 1332(a)(1). This Court further has supplemental jurisdiction over Kraft Heinz's state law claims under 28 U.S.C. § 1367(a) because those claims are so related to the federal claims in the action that they form part of the same case or controversy.

5.      This Court has personal jurisdiction over Defendant because, among other things, Defendant regularly conducts business in this judicial district through its advertising and sale of products to residents of this district.

6.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c), as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL BACKGROUND

7.      For more than a century, Kraft Heinz, now a subsidiary of The Kraft Heinz Company, has owned and marketed some of the most famous household food product brands in the country.

8.      Among its many brands, Kraft Heinz owns multiple POPPERS and POPPER-formative trademarks and trademark registrations (collectively the "POPPERS Marks"), which are used to market and sell a variety of frozen appetizers and other food products.  Kraft Heinz's federal registrations for its POPPERS Marks include the following (copies of corresponding trademark registration certificates are attached and made a part hereof as **Exhibit A**):

2

a.      POPPERS (Reg. No. 1922249), in connection with "coated and breaded vegetable pieces," registered September 26, 1995 (incontestable);

b.      POPPERS (Reg. No. 4072427), in connection with "Frozen appetizers consisting primarily of vegetables, pork and/or cheese, not including shrimp," registered December 20, 2011 (incontestable);

c.      POPPERS,  (Reg. No. 4072428), in connection with "Frozen appetizers consisting primarily of vegetables and/or cheese, not including shrimp," registered December 20, 2011 (incontestable); and

d.      FIESTA BOLD POPPERS (Reg. No. 4584621), in connection with "Breaded processed vegetable and cheese pieces," registered August 12, 2014.

9.      Since at least November 1992, Kraft Heinz has licensed its POPPERS Marks to, among others, its parent, Kraft Heinz Foods Company,  for use in connection with the advertising, promotion and sale of a variety of breaded and/or frozen appetizers and other food products in grocery stores and other retailers in this judicial district and throughout the United States, including POPPERS-branded products marketed by Kraft Heinz Foods Company under the TGI FRIDAY'S house brand pursuant to a license with the TGI Friday's restaurant company.

10.      Kraft Heinz also licenses its POPPERS Marks to international food company McCain Foods for use in connection with the marketing and sale of breaded and/or frozen appetizers and other food products in the foodservice industry throughout the United States.

11.      Kraft Heinz and its licensees have invested millions of dollars in advertising, promoting and marketing high quality food products under the POPPERS Marks.  Indeed Kraft Heinz Foods Company spends more than $1 million per year marketing its TGI FRIDAY'S line

of frozen food products, including the TGI FRIDAY'S POPPERS products.  As a result, Kraft Heinz has developed considerable consumer goodwill and valuable rights in the POPPERS Marks.

12.     The fame and success of the POPPERS Marks is evidenced by, among other things, Kraft Heinz Foods Company's annual sales of POPPERS-branded products, which have exceeded $20 million per year in net sales since at least 2015.

13.     The fame and success of the POPPERS Marks is further evidenced by the extent to which Kraft Heinz, through its licensees, has achieved widespread distribution for POPPERS-branded products in retail stores throughout the country.  One of the most important measures of product success in the retail food industry is what is known as "%ACV Distribution" (or "%ACV"), which reflects the percentage of stores selling a particular product, weighted based on the size of the store (as measured by the store's annual sales of all products that it sells, or its "All Commodity Volume").  *See generally, e.g.,* Robin Simon, "The 2nd Most Important Measure:  % ACV Distribution," CPG Data Tip Sheet (Nov. 7, 2012) (available online at https://www.cpgdatainsights.com/distribution/2nd-most-important-part1/).  Since at least 2015, POPPERS-branded products have achieved 63-66% ACV – a strong indicator of national distribution.

14.     Kraft Heinz zealously defends its rights in the POPPERS Marks, taking action whenever appropriate to stop any unlicensed uses of the POPPERS Marks and/or any confusingly similar marks.

15.     Kraft Heinz recently learned that Defendant has begun selling frozen snack and appetizer products using counterfeit and/or infringing POPPERS marks, long after Kraft Heinz's first use in commerce of its POPPERS Marks for the same and similar products. Appended hereto

as **Exhibit B** are current images from Defendant's website displaying its POPPERS-branded products.

16.     Defendant sells its frozen snack and appetizer products branded with counterfeit and/or infringing POPPERS marks in grocery stores and other retailers in this judicial district and throughout the United States. By way of example, attached hereto as **Exhibit C** is a current image from Defendant's website showing the availability of its POPPERS-branded products in Pittsburgh-area stores.

17.     Defendant marks its counterfeit and/or infringing POPPERS-branded products with a "TM" symbol, thereby representing to the public – falsely – that Defendant has trademark rights in the POPPERS Marks. *See, e.g.,* **Exhibit D**.

18.     Defendant has actual knowledge of Kraft Heinz's POPPERS Marks.  Indeed, on its website Defendant purports to compare its counterfeit and/or infringing POPPERS-branded products with POPPERS-branded appetizers sold by TGI Fridays pursuant to a license from Kraft Heinz. *See, e.g.,* **Exhibit E**.

19.     Defendant does not have, nor has it ever had, a license from Kraft Heinz to use the POPPERS Marks.

20.     By letters dated January 14, 2019 and March 20, 2019 (copies appended hereto as **Exhibits F** and **G**, respectively), Kraft Heinz demanded that Defendant cease its unauthorized use of Plaintiff's POPPERS Marks.

21.     Defendant has refused to cease its use of the counterfeit and/or infringing POPPERS Marks and continues to promote and sell its infringing products.

22.     Defendant's use of counterfeit and/or infringing POPPERS marks to promote and sell frozen snack and appetizer products has caused and/or is likely to cause consumer confusion

5

regarding the source or origin of Defendant's products and/or regarding some affiliation between Defendant and Kraft Heinz, the owner of the POPPERS Marks.

23.     Defendant has used, and continues to use, its counterfeit and/or infringing POPPERS marks in knowing, deliberate and willful disregard of Kraft Heinz's rights in its POPPERS Marks.

## COUNT I
## FEDERAL TRADEMARK COUNTERFEITING
## (15 U.S.C. §§ 1114)

24.     Kraft Heinz restates and incorporates by reference the averments set forth in paragraphs 1 through 23 above.

25.     Defendant has used, and continues to use, counterfeit POPPERS marks that are identical to and/or indistinguishable from Kraft Heinz's registered POPPERS Marks to promote and sell frozen appetizers and other food products that are identical and/or substantially similar to the products sold by Kraft Heinz (through its authorized licensees) under the registered POPPERS Marks.

26.     Kraft Heinz possesses valid and superior rights in its registered POPPERS Marks.

27.     Kraft Heinz has never licensed or otherwise authorized Defendant to use any of the POPPERS Marks.

28.     At the time it commenced its use of counterfeit POPPERS marks, Defendant had both actual and constructive notice of Kraft Heinz's existing and superior rights to the registered POPPERS Marks.

29.     Defendant markets its counterfeit POPPERS-branded products to the same class of consumers, in the same channels of trade, as those to which and in which Kraft Heinz, through its licensees, markets products under the POPPERS Marks.

30.     Defendant's use of POPPERS marks that are identical to and/or indistinguishable from Kraft Heinz' POPPERS Marks, to sell identical or substantially similar types of goods to the same classes of consumers in the same channels of trade, has caused and/or is likely to cause confusion, mistake, and deception among consumers, leading them to believe, falsely, that Defendant's goods are those of, sponsored or approved by, and/or in some way connected with Kraft Heinz, to the irreparable injury of Kraft Heinz and the public.  Despite such a likelihood of public confusion, mistake, or deception, Defendant has continued to use and is presently using its counterfeit POPPERS marks, disregarding Kraft Heinz's demands that Defendant cease this activity.

31.     Through its use of counterfeit POPPERS marks, Defendant willfully has sought to misappropriate Kraft Heinz's rights in its registered POPPERS Marks and the valuable goodwill associated with those marks, to Defendant's unlawful detriment.

**32.**     Defendant's wrongful use of counterfeit POPPERS marks has caused irreparable harm to Kraft Heinz, and will continue to cause such harm unless enjoined.

### COUNT II
### FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. §§ 1114 and 1125(a))

33.     Kraft Heinz restates and incorporates by reference the averments set forth in paragraphs 1 through 32 above.

34.     Defendant has used, and continues to use, POPPERS marks that are confusingly similar to Kraft Heinz's POPPERS Marks to promote and sell frozen appetizers and other food products that are identical and/or substantially similar to the products sold by Kraft Heinz, through its authorized licensees, under the POPPERS Marks.

35.     Kraft Heinz possesses valid and superior rights in its POPPERS Marks.

36.    Kraft Heinz has never licensed or otherwise authorized Defendant to use any of the POPPERS Marks.

37.    At the time it commenced its use of confusingly similar POPPERS marks, Defendant had both actual and constructive notice of Kraft Heinz's existing and superior rights to the POPPERS Marks.

38.    Defendant markets its confusingly similar POPPERS-branded products to the same class of consumers, in the same channels of trade, as those to which and in which Kraft Heinz, through its licensees, markets products under the POPPERS Marks.

39.    Defendant's use of POPPERS marks that are confusingly similar to Kraft Heinz' POPPERS Marks, to sell identical or substantially similar types of goods to the same classes of consumers in the same channels of trade, has caused and/or is likely to cause confusion, mistake, and deception among consumers, leading them to believe, falsely, that Defendant's goods are those of, sponsored or approved by, and/or in some way connected with Kraft Heinz, to the irreparable injury of Kraft Heinz and the public.  Despite such a likelihood of public confusion, mistake, or deception, Defendant has continued to use and is presently using its confusingly similar POPPERS marks, disregarding Kraft Heinz's demands that Defendant cease this activity.

40.    Through its use of confusingly similar POPPERS Marks, Defendant willfully has sought to misappropriate Kraft Heinz's rights in its registered POPPERS Marks and the valuable goodwill associated with those marks, to Defendant's unlawful detriment.

41.    Defendant's wrongful use of confusingly similar POPPERS marks has caused irreparable harm to Kraft Heinz, and will continue to cause such harm unless enjoined.

## COUNT III
## FEDERAL UNFAIR COMPETITION,
## FALSE REPRESENTATION AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

42.     Kraft Heinz restates and incorporates by reference the averments set forth in paragraphs 1 through 41 above.

43.     Defendant's use of POPPERS marks that are confusingly similar to Kraft Heinz's POPPERS Marks, as described above, actually deceive and/or are likely to deceive consumers into believing, falsely, that Defendant's products are those of, sponsored or approved by, or are in some way connected with Kraft Heinz, all to the irreparable injury of Kraft Heinz and the public.

44.     Defendant's wrongful conduct constitutes federal unfair competition in the form of passing off, false representation, false advertising, and false designation of origin, all in direct violation of 15 U.S.C. § 1125(a).

45.     Defendant's wrongful use of confusingly similar POPPERS Marks in violation of federal law has been and continues to be willful.

**46.**     Defendant's wrongful use of confusingly similar POPPERS marks has caused irreparable harm to Kraft Heinz, and will continue to cause such harm unless enjoined.

## COUNT IV
## FEDERAL DILUTION
## (15 U.S.C. §1125(c))

47.     Kraft Heinz restates and incorporates by reference the averments set forth in paragraphs 1 through 44 above.

48.     Kraft Heinz's POPPERS Marks are famous and distinctive.

49.     Defendant's use of POPPERS marks began after Kraft Heinz's POPPERS Marks became famous.

50.     Defendant's use of POPPERS marks is likely to cause dilution by blurring and/or tarnishment, in violation of 15 U.S.C. §1125(c).

51.     Defendant's wrongful use of POPPERS Marks in violation of federal law has been and continues to be willful.

52.     Defendant's wrongful use of POPPERS marks has caused irreparable harm to Kraft Heinz, and will continue to cause such harm unless enjoined.

**COUNT V**
**COMMON LAW TRADEMARK INFRINGEMENT**

53.     Kraft Heinz restates and incorporates by reference the averments set forth in paragraphs 1 through 52 above.

54.     Defendant's wrongful use of POPPERS marks that are identical and/or confusingly similar to Kraft Heinz's POPPERS Marks has caused and/or is likely to cause consumer confusion, and thus constitutes common law trademark infringement.

55.     Defendant's use of infringing POPPERS marks has been and continues to be willful.

56.     Defendant's use of infringing POPPERS marks has caused irreparable harm to Kraft Heinz, and will continue to cause such harm unless enjoined.

**COUNT VI**
**STATE LAW DILUTION**
**(54 PA. C.S.A. § 1124)**

57.     Kraft Heinz restates and incorporates by reference the averments set forth in paragraphs 1 through 56 above.

58.     Kraft Heinz's POPPERS Marks are famous and distinctive in this Commonwealth.

59.     Defendant's use of POPPERS marks began after Kraft Heinz's POPPERS Marks became famous.

10

60.    Defendant's use of POPPERS marks is likely to dilute the distinctive quality of Kraft Heinz's POPPERS Marks.

61.    Defendant's wrongful use of POPPERS Marks has been and continues to be willful.

62.    Defendant's wrongful use of POPPERS marks has caused irreparable harm to Kraft Heinz, and will continue to cause such harm unless enjoined.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff H.J. Heinz Company Brands LLC respectfully requests that this Court enter an Order:

1.    Preliminarily and permanently enjoining Defendant, its officers, directors, agents, owners, employees, representatives and attorneys, and all others acting under or in concert with Defendant, or with any of them, from using the designation POPPERS or any colorable imitation thereof, either separately or together with other words, symbols or devices, as a corporate or trading name or as a trademark, in connection with the promotion, advertising, marketing and or sale of (a) frozen appetizers and/or (b) coated and/or breaded vegetable and/or cheese pieces;

2.    Finding that Defendant's activities complained of herein constitute federal counterfeiting; federal trademark infringement; federal unfair competition, false representation, and false designation of origin; federal dilution; common law trademark infringement; and dilution under Pennsylvania law;

3.    Commanding Defendant and its agents, employees, representatives, and all others acting under their direction or control or in concert with them, or any of them, to immediately deliver up to Plaintiff for destruction all product, labels, packaging, containers, tags, advertising and/or promotional materials, and any and all other

materials which bear one or more of Plaintiff's POPPERS Marks and/or any colorable imitation thereof;

4.     Directing Defendant to file with this Court and to serve on Plaintiff within thirty (30) days after service of a final injunction a report, in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction and any further orders of this Court;

5.     Granting to Plaintiff all remedies permissible under 15 U.S.C. § 1117 for trademark counterfeiting, trademark infringement and dilution, specifically including but not limited to an award of Defendant's profits and Plaintiff's damages, and/or an award of statutory damages for counterfeiting at Plaintiff's election, as well as costs of suit, treble damages and attorneys' fees; and

6.     Awarding Plaintiff such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.


**H.J. HEINZ COMPANY BRANDS, LLC**


Dated: July 26, 2019

_s/ Christina Tellado_
Christina Tellado (PA 204246)
HOLLAND & KNIGHT LLP
Cira Centre
2929 Arch Street, Suite 800
Philadelphia, PA 19104
215-252-9600
Christina.Tellado@hklaw.com

Tracy Zurzolo Quinn (PA 71072)
(_pro hac vice_ application pending)
HOLLAND & KNIGHT LLP
Cira Centre
2929 Arch Street, Suite 800
Philadelphia, PA 19104
215-252-9600
Tracy.Quinn@hklaw.com

Counsel for Plaintiff